# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| MEGAN HOLMES, individually and as Administrator of the Estate of Cathy Jo Holmes, | * * * * | |
| Plaintiff, | * * | |
| vs. | * * | CV 211-111 |
| JOSEPH PARKER; UNITED STATES OF AMERICA; MARGARET'S KEY, LLC, | * * * | |
| Defendants. | * | |

## ORDER

Presently before the Court is a Motion for Summary Judgment or in the Alternative a Motion to Dismiss filed by Defendant United States of America. See Dkt. No. 41. For the reasons stated below, the Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

This case arises out of a tragic boating accident that led to the death of Cathy Jo Holmes, the Decedent. On Saturday, July 11, 2009 between 6:00 p.m. and 7:00 p.m., Joseph J. Parker, William Turner, and the Decedent boarded Parker's twenty-three foot motorboat to meet friends at Raccoon Key, an island off Jekyll Island. Dkt. No. 48, Ex. 3 ¶ 1. Parker used a portion

AO 72A
(Rev. 8/82)

of the Intracostal Waterway to travel south from the Brunswick Landing Marina to Raccoon Key. Parker had travelled through the Jekyll Creek Intracoastal Waterway approximately "one thousand times" since he was ten years-old, and the evening's first trip through the Intracoastal Waterway was uneventful. Dkt. No. 48, Ex. 3 ¶ 2. After passing through the Intracoastal Waterway, Parker and his companions met Layton Johns, Don Drury, and Erin Drury at Raccoon Key sometime between 7:30 p.m. and 8:00 p.m. Dkt. No. 48, Ex. 3 ¶ 3. The group of friends stayed at Raccoon Key fishing off the dock before leaving for St. Andrews Sound at approximately 10:30 p.m. to go shark fishing. Dkt. No. 48, Ex. 3 ¶ 4.

The party later returned to Raccoon Key during the early morning hours of Sunday July 12, 2009. Dkt. No. 48, Ex. 3 ¶ 4. Parker's boat ran aground in the marsh while they were returning to the dock. Dkt. No. 48, Ex. 3 ¶ 6. However, SeaTow, a towing company for boats, was called and was able to pull the boat free from the marsh without damage. Dkt. No. 48, Ex. 3 ¶ 7. After unloading the boat and eating a sandwich at Raccoon Key, Parker and the Decedent decided to return to the Brunswick Landing Marina to retrieve additional fishing gear so they could go

2

offshore fishing later that same morning. Dkt. No. 41, Ex. 1 ¶ 9.[1]

Once again, the boat with Turner, Parker, and the Decedent headed for the Brunswick Landing Marina. Dkt. No. 48, Ex. 3 ¶ 10. The United States contends, with supporting evidence, that at some point during this trip the Decedent took the helm of the boat. See Dkt. No. 41, Ex. 1. Plaintiff adamantly disagrees and asserts that Parker drove the entire time. Plaintiff has presented no evidence supporting this position. The question of who was at the helm at the time of the accident, however, has no bearing on the outcome of the present Motion.

While travelling through the Intracoastal Waterway for a final time, the boat suddenly jerked, left the channel, and crashed into the rocks alongside the waterway. Dkt. No. 48, Ex.

---

[1] In her response to the United State's Statement of Material Fact, Plaintiff disputed several paragraphs. However, for the vast majority of these paragraphs, Plaintiff failed to indentify or present any evidence actually contradicting the United States' statement. See, e.g., Dkt. No. 48, Ex. 3 ¶¶ 9, 12, 13, 15. Plaintiff vaguely asserted that she "anticipates that the testimony at trial will contradict" the evidence cited by the United States. See, e.g., Dkt. No. 48, Ex. 3 ¶¶ 9, 12, 13, 15. This, however, is insufficient to create a factual dispute. If Plaintiff had any supporting evidence, the time to present such evidence was in her response to the United States' summary judgment motion. Discovery has long since closed. While Plaintiff in her response requested additional time to conduct several depositions, she never made a formal motion and, in ruling on another evidentiary issue, the Magistrate Judge denied Plaintiff's request stating that Plaintiff offered "reason for the delay in her request for depositions . . . and Plaintiff at no time prior to the close of discovery moved for an extension of the discovery period." Dkt. No. 56.

3 ¶ 4. Parker and the Decedent were thrown from the boat and into the water. Dkt. No. 48, Ex. 3 ¶ 17. Parker swam back to the boat, located the radio handset, and made a mayday call to the Coast Guard for assistance. Dkt. No. 48, Ex. 3 ¶ 18. Parker and Turner, who had managed to remain inside the boat, began yelling for the Decedent. Dkt. No. 48, Ex. 3 ¶ 19. Parker eventually located the Decedent floating unconscious in the water nearby. Dkt. No. 48, Ex. 3 ¶ 20. Parker pulled the Decedent onto the rocks and administered CPR. Dkt. No. 48, Ex. 3 ¶ 21.

Both a Coast Guard response boat and a private "Good Samaritan" boat operated by Creighton Dukes heard and responded to the mayday call. Dkt. No. 48, Ex. 3 ¶ 4. Once on the scene, the Coast Guard boat retrieved Parker and the unconscious Decedent from the rocks. Dkt. No. 48, Ex. 3 ¶¶ 25-26. Despite several CPR attempts, the Decedent was never revived. Dkt. No. 48, Ex. 3 ¶ 26. On the way back to the station, Parker described the accident to the Coast Guard crew and stated that, while the Decedent was driving, it felt like something reached up and grabbed or jerked the helm of the boat, causing the boat to crash into the rocks. Dkt. No. 48, Ex. 3 ¶ 29.

After transporting Parker, the Decedent, and Turner to the Coast Guard station, Dukes and the Coast Guard crew returned to the scene of the accident to investigate. Dkt. No. 48, Ex. 3 ¶¶

AO 72A
(Rev. 8/82)

30-31. They observed some type of line fouled in the vessel's propeller. Dkt. No. 48, Ex. 3 ¶ 4. Although Plaintiff attributes a different cause to the accident, Parker believes his boat crashed as a result of a crab pot that caused the line to wrap around the vessel's propeller, which caused the boat to jerk and the Decedent to lose control. Dkt. No. 41, Ex. 1 ¶ 32.

Plaintiff, individually and as the administrator of the Decedent's estate, brought the present action against Parker, the United States, and Margaret's Key, LLC, the owner and operator of Raccoon Key. See Dkt. No. 1. Plaintiff alleged that the United States caused the accident because it improperly marked, illuminated, and maintained the jetty. See Dkt. No. 1.

**LEGAL STANDARD**

The United States has moved for summary judgment, or in the alternative, dismissal for lack of jurisdiction. Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge

this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Under Federal Rule of Civil Procedure 12(b)(1), there are two types of motions to dismiss for lack of subject matter jurisdiction—facial attacks and factual attacks. Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003) (citing Lawrence v. Dubar, 919 F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Id. "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." Id. In considering a factual attack:

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to existence of its power to hear the case. In short, no presumptive truthfulness attaches
6

> to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims.

Lawrence, 919 F.2d at 1529 (citing Williamson v. Tucker, 645 F.2d 404, 412-413 (5th Cir. 1981)).

## DISCUSSION

This Court will first address the threshold question of jurisdiction before turning to the United State's other arguments. The United States contends that Plaintiff cannot maintain the present action because sovereign immunity has not been waived. See Dkt. No. 41. Ex. 6. It is well established that the United States, as sovereign, is immune from suit except where it consents to be sued, and the terms of its consent define the court's jurisdiction. United States v. Sherwood, 312 U.S. 584, 586 (1941); Cranford v. United States, 466 F.3d 955, 957-58 (11th Cir. 2006); Mid-South Holding Co., Inc. v. United States, 225 F.3d 1201, 1203 (11th Cir. 2000). The consent to be sued cannot be implied but must be "unequivocally expressed" and strictly construed in the United States' favor. United States v. Nordic Village, 503 U.S. 30, 34-35 (1992) (citations omitted).

The Eleventh Circuit, consistent with the majority of circuits, has held that the waiver of sovereign immunity under the Suits in Admiralty Act is limited by the discretionary

AO 72A
(Rev. 8/82)

function exception found in the Federal Torts Claims Act. See Mid-South, 225 F.3d at 1203-1204. Under the discretionary function exception, the United States is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The application of the discretionary function exception is determined by a two-step test. United States v. Gaubert, 499 U.S. 315, 322-23 (1991). First, the court considers whether the conduct involves "an element of judgment or choice, which will be the case unless "a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed and readily ascertainable standard." Cranford, 466 F.3d at 958 (citations omitted). Under current law, the conduct need not be "confined to the policy or planning level." Gaubert, 499 U.S. at 325.

Second, the court asks "whether the judgment or choice is grounded in considerations of public policy, because the purpose of the discretionary function exception is to prevent judicial

8

'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of action in tort." Cranford, 466 F.3d at 98 (citations omitted). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. (citations omitted). The "inquiry does not focus either on the subjective intent of the government agent, or on whether the agent actually weighed policy considerations, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. (citations omitted).

Plaintiff has advanced two different types of conduct on the part of the Coast Guard that she alleges were deficient. First, Plaintiff claims that the jetty was not sufficiently illuminated or marked. Second, the Plaintiffs assert that the markers the Coast Guard did provide were negligently maintained in that some of the light bulbs were out.

The first type of conduct clearly falls within the discretionary function exception. Establishing navigational aids involves the element of judgment and choice as indicated by the applicable statute. Fourteen U.S.C. § 86 states that the "Secretary *may* mark for the protection of navigation any sunken

vessel or other obstruction existing on the navigable waters . . . in such manner and for so long as, *in his judgment*, the needs of maritime navigation require." (emphasis added). This statutory language places no restraints on the Secretary's decision.

As for the second prong, the decision at issue was grounded in policy because when, as here "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Cranford, 466 F.3d at 98 (citations omitted). Additionally, courts have repeatedly held that the placement of navigational aids falls within the discretionary function exception. See id. at 959 (determining that 14 U.S.C. § 86 confers discretionary authority on the Coast Guard); Theriot v. United States, 245 F.3d 388 (5th Cir. 1998) ("[I]t is clear that the government's decision whether to place a warning sign or marker at the sill's location was a discretionary decision that required judgment or choice and one that was grounded in public policy considerations."); Arguesa LDC v. United States, 622 F. Supp. 2d 1322, 1330 (S.D. Fla. 2008) ("[I]t is clear that the establishment, maintenance, and operation of aids to navigation are precisely the types of conduct and judgments that the discretionary function exception

10

is designed to shield."); <u>Williams ex rel. Sharpley v. United States</u>, 581 F. Supp. 847, 854 (S.D. Ga. 1983) (duty of Coast Guard to mark objects in navigable waters is discretionary function).

As for the second type of conduct identified by Plaintiff, Plaintiff steadfastly maintains that, once the Coast Guard has placed navigation aids, it lacks discretion in maintaining them. See Dkt. No. 48. Fourteen U.S.C. § 81, however, states that "[i]n order to aid in navigation and to prevent disasters, collisions, and wrecks of vessels and aircraft, the Coast Guard *may* establish, *maintain*, and operate: (1) aids to maritime navigation . . . . " (emphasis added). Under the <u>Gaubert</u> test, this broad authority given to the Coast Guard in maintaining navigation aids supports a finding that this exercise is discretionary.

Additionally, other courts have determined that the Coast Guard's decisions regarding how and when to maintain aids and how to prioritize repairs is a discretionary function. See <u>Harrell v. United States</u>, 443 F.3d 1231 (10th Cir. 2006) (holding "that the Coast Guard's decisions concerning whether and when to service the buoy at issue . . . were policy-based" discretionary decisions dependent on "the availability and allocation of agency resources."); <u>Smith v. United States</u>, 251 F. Supp. 2d 1255 (D.Md. 2003) (Coast Guard's decision, after

11

receiving notification that a daybeacon was broken, to address the problem the next day was discretionary).

There is authority that once the Coast Guard undertakes to provide navigational aids and engenders reliance on those aids, the Coast Guard is obligated to make certain that they are in good working condition. See Indian Towing v. United States, 350 U.S. 61, 54-65 (1955); Whitney S.S. Co. v. United States, 747 F.2d 69, 72 (2d Cir. 1984) (citing Indian Towing for proposition that "once the government exercises its discretion to operate navigational aids and engenders reliance on the guidance afforded by such aids, it is thereafter obliged to make certain that they remain in good working condition.").

Indian Towing, however, does not control the present case for two reasons. First, in Indian Towing "the discretionary function exception was not at issue because the government conceded that it did not apply" based on the then-applicable rules that distinguished between operational level decisions and decisions at the policy and planning levels. See Harrell, 443 U.S. at 1237 (describing the law with regards to discretionary function in place at the time Indian Towing was decided); Monzon v. United States, 253 F.3d 567, (11th Cir. 2001) (noting that in Indian Towing "the Government did not attempt to invoke the benefit of the discretionary function exception"); Ochran v. United States, 117 F.3d 495, 505 (11th Cir. 1997) ("Indian

12

Towing, however, has been severely undercut, if not altogether disavowed by the Supreme Court in Gaubert.").

Finally, even apart from the discretionary function exception, Plaintiffs claim against the United States for failing to maintain the navigable aids fails. Plaintiff contends that the lights in the aids guiding the boat were out the night of the accident. However, no evidence in the record supports this assertion. Parker, in his deposition, stated "that there were some lights that needed to be fixed." Dkt. No. 41, Ex. 2, 124:22-25, 125:1-3. The lights Parker referred to, however, were lights used to guide vessels into the Intracoastal Waterway and Jekyll Creek, not to guide vessels coming out of the area. Dkt. No. 41, Ex. 2, 133:4-14. The accident occurred when Parker's boat was travelling out of the Intracoastal Waterway so Parker testified that the broken lights "were not at play" when the accident happened. Dkt. No. 41, Ex. 2, 133:11-15. In sum, even apart from discretionary function exception, Plaintiffs claims against the United States fail.

13

## CONCLUSION

The United States' Motion for Summary Judgment is **GRANTED**. Dkt. No. 41. A pretrial conference for the remaining claims and parties is set for April 4th at 1:00pm.

**SO ORDERED**, this 6th day of March, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)