# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| MEGAN HOLMES, Individually and as Administrator of the Estate of Cathy Jo Holmes, | \* \* \* \* |
| Plaintiff, | \* \* |
| v. | \* 2:11-cv-111 \* |
| JOSEPH PARKER, | \* \* |
| Defendant. | \* |

### ORDER

This case arises out of a tragic boating accident that claimed the life of Cathy Jo Holmes in the predawn moments of July 12, 2009, in the waters near Jekyll Island, Georgia. On July 10, 2014, the Court conducted a one-day bench trial involving Plaintiff and Defendant Joseph Parker.[1]

The parties dispute who was at the helm of the boat when the accident occurred. Plaintiff contends Parker was driving the boat at the time of the accident; Parker contends it was Holmes, the Decedent. There were three people on the boat at the time of

---

[1] The United States of America's motion for summary judgment was granted on March 6, 2013. (Doc. 57). Margaret's Key, LLC was placed in default on June 6, 2012, (Doc. 44), and default judgment was entered against Margaret's Key, LLC on August 20, 2014. (Doc. 85).

1

the accident. One testified (Parker), one could not (the Decedent), and one did not (William Turner).

After hearing all of the testimony and considering all of the evidence, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

I. **Findings of Fact**

(1)

The Plaintiff called Christopher Hodge as a witness. Hodge was employed in the Law Enforcement Division of the Georgia Department of Natural Resources. He took a leading role in the investigation of the July 12, 2009 accident. (Tr. 13-18).

(2)

As a part of his investigation, Hodge spoke with the two surviving occupants of the boat: Defendant Joseph Parker, who owned the 23-foot Pro-Line motorboat, and William Turner, a passenger. Hodge also interviewed individuals who had seen the boating party earlier in the evening, including Layton Johns and Don Drury. Additionally, Hodge investigated the scene of the accident and the boat. (Tr. 20-22).

(3)

Hodge spoke with Parker at the hospital not long after the accident. Parker told Hodge that Holmes had been driving the

2

boat at the time of the accident. (Tr. 59). Parker's injuries included eight broken ribs, extensive bruising and a dislocated elbow. (Tr. 45, 84; Pl.'s Ex. 4).

(4)

Hodge studied the injuries to Holmes' body. She suffered a head gash, broken teeth, injuries to her nose, bruises to her shoulder, torn flesh above her breast and hand injuries. The cause of her death was drowning. (Tr. 64-69).

(5)

Hodge interviewed Turner who told Hodge that, over the course of the night, both Parker and Holmes drove the boat. (Tr. 60). Although Turner was on the boat at the time of the accident, he was in a rear-facing seat and unable to say who was driving at the time of the accident. (Tr. 26, 60; Pl.'s Ex. 2A). Other people at a pre-accident party on Raccoon Key, such as Layton Johns and Don Drury, saw Parker drive the boat earlier, but they were not present to witness who was at the helm at the time of the accident. (Tr. 21-22).

(6)

Parker's medical records indicated the presence of alcohol in his system, along with cocaine and marijuana. (Tr. 52-55; Pl.'s Ex. 31). Holmes' records were negative for the presence of alcohol but positive for cocaine and hydrocodone. (Tr. 53). A

3

pipe and a small bag containing a green, leafy substance were found on board the boat. (Tr. 25).

(7)

Ultimately, Hodge was unable to determine through physical evidence who was driving the boat at the time of the accident. (Tr. 23-24).

(8)

Although he was unable to determine through physical evidence who was driving the boat, Hodge believes the cause of the accident was operator inattention, whoever that operator was. (Tr. 23).

(9)

Hodge noticed three different kinds of rope of varying sizes wrapped around the propeller of the boat after the accident occurred. (Tr. 38-39).

(10)

Hodge does not believe the ropes caused the accident, nor does he believe the boat hit a crab trap line, causing it to jerk. Hodge testified that some of the lines on the propeller could have been the same size as a crab line, but some were similar to the lines found on Parker's boat. Additionally, some of the lines on the propeller had hand-tied loops, and they did not appear to have been in the water for long. No crab traps were

4

found in the vicinity, and the lines were loosely wrapped around the propeller. Accordingly, Hodge concludes that the lines reached the propeller after the accident and came from Parker's boat. (Tr. 38-43).

(11)

The Plaintiff called Defendant Joseph Parker for the purpose of cross-examination. Additionally, Parker testified on direct examination as the sole witness called by the defense. Parker provided the only eyewitness trial testimony of what happened immediately before, during and after the accident.

(12)

According to Parker, he and Cathy Holmes lived together at his home in Brunswick, Georgia, out of which Holmes conducted a very successful title search business. (Tr. 104).

(13)

On the evening of July 11, 2009, Parker and Holmes boarded Parker's boat at the Brunswick Landing Marina at approximately 6:00 p.m. to go shark fishing off of Raccoon Key, a private island. Parker drove the boat, and they arrived at Raccoon Key around 7:00 p.m. that evening. (Tr. 104-107).

AO 72A
(Rev. 8/82)

(14)

Alcohol was served at Raccoon Key, but there was no evidence that Parker witnessed Cathy Holmes drinking or ingesting drugs near the time of the accident. (Tr. 107-108, 228-229).[2]

(15)

At approximately 10:30 p.m. the partygoers went shark fishing, and Parker drove the boat. (Tr. 108-109).

(16)

On the way back to Raccoon Key, the boat became stuck on the marsh. Sea Tow was called to dislodge the boat, and the boat was back in service by 2:10 a.m. (Tr. 109-114).

(17)

Holmes, Turner and Parker left Raccoon Key again at approximately 3:30 a.m. with Parker at the helm. (Tr. 114-115). As they continued their trip, Holmes took the helm, according to Parker, near the Jekyll Island Marina. (Tr. 215). She did so with Parker's consent and permission. (Tr. 104).

(18)

Parker testified that Holmes slowed the boat as they approached a small vessel stopped to fish for flounder. After clearing the

---

[2] Parker's deposition testimony indicates that Parker saw Holmes consume some limited amount of alcohol the evening before the predawn accident. (Pl.'s Ex. 33, pp. 34, 58, 62). This comports with Holmes' medical records which showed no alcohol in Holmes' system.

flounder fishing boat, Holmes began to bring the boat back on plane. (Tr. 118).

(19)

Parker was in the process of securing a cushion when he felt the boat jerk. He heard Holmes scream. (Tr. 118).

(20)

Parker looked up and saw that they were heading toward the rocks of the Jekyll Island jetty. He reached over to grab the steering wheel to try to turn the boat away but was unable to do so. The boat impacted the rocks. (Tr. 120, 216-217).

(21)

Holmes and Parker were thrown from the boat, but Turner remained on board. Parker yelled at Turner to cut off the boat engine, which Turner did. (Tr. 217). Parker got back to the boat and instituted a Mayday call to the Coast Guard. He did not see Holmes and immediately began to search for her. Parker found Holmes face down in the water. He pulled her to the rocks and tried to revive her but was unable to do so. (Tr. 218-219).

(22)

Parker is a very experienced boater, having operated boats since the age of 10 or 11. (Tr. 116). He testified that Holmes had experience as well, having driven his boat at least 25 to 30 times. Parker testified that he and Holmes had extensive

7

experience in the area near the Jekyll jetty. They had been together on a boat in that area at least 100 times and dozens of times at night. Holmes herself had, prior to the accident, steered the boat through the Jekyll jetty area at night. (Tr. 221-224).

(23)

Regarding Holmes' operation of the boat, Parker did not see Holmes do anything wrong or inappropriate the morning of her death. (Tr. 225). Parker had no knowledge that Holmes was in any way impaired. (Tr. 231).

(24)

Four additional witnesses were called by the Plaintiff, and each of the four testified about what a full and meaningful life Holmes led, as well as to shed light on her family history and relationship with Parker.

(25)

Jennifer Lewis is Holmes' stepdaughter. (Tr. 134). She testified that Holmes loved the outdoors and activities such as hiking, kayaking and traveling. She traveled the world and was a staunch advocate for her daughter, Morgan, who was disabled. (Tr. 139-141).

(26)

Holmes encountered tragedy in 2005 when her husband, Mike, died and again in 2007 when Morgan, her disabled daughter, died. (Tr. 139).

(27)

Lewis testified that it was typical for Parker to be drinking while operating the boat, and she described an evening on the boat where she felt fearful for her safety and that of the other passengers, at least in part because of Parker's impairment. (Tr. 136, 145). Lewis was aware that Holmes had smoked marijuana but had never seen her operate a boat, impaired or otherwise. (Tr. 146, 134-135).

(28)

Ray Davidson is Holmes' older brother. (Tr. 149). Their family had a boat while they were growing up, but Davidson never saw Holmes operate it or any other boat. (Tr. 151).

(29)

Cindy Crowder Harper is Holmes' sister. (Tr. 156). Harper was aware that after Holmes' daughter Morgan died, Holmes participated in drinking alcohol and smoking marijuana. (Tr. 160). Harper saw Holmes operate Parker's boat only

9

sporadically, and Harper testified that Parker was "mostly always drinking" while operating the boat. (Tr. 157, 164-165).

(30)

Megan Holmes ("Megan") is Cathy Holmes' daughter and the administrator of her estate. (Tr. 176). Megan gave very vivid and completely credible testimony about what an excellent person and outstanding mother Cathy Holmes was. (Tr. 191-196).

(31)

Holmes was 50 years old at the time of her death. (Tr. 173). Prior to the accident, Megan smoked marijuana with her mother but never on the boat. (Tr. 184). She saw her mother drive the boat a few times for short periods. (Tr. 180). Megan observed Parker drinking regularly. (Tr. 177).

II. **Conclusions of Law**

(1)

Plaintiff brought two causes of action against Defendant Parker. First, she brought an admiralty and maritime claim, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, alleging negligence and wrongful death. (Compl. ¶¶ 6, 32).

(2)

Jurisdiction of that admiralty claim is proper pursuant to 28 U.S.C. § 1333. (Compl. ¶ 5).

(3)

10

Second, Plaintiff brought a state law claim for damages based on the allegedly negligent operation of a motorboat owned by Parker, pursuant to O.C.G.A. sections 51-1-21(b) and 51-1-22. (Compl. ¶¶ 37-38).

(4)

Jurisdiction of that state law claim is proper pursuant to 28 U.S.C. § 1367. (Compl. ¶ 8).

(5)

The case proceeded to a nonjury trial on the basis of admiralty jurisdiction. Both parties stipulated to the Court deciding both causes of action: the negligence/wrongful death claim brought under federal admiralty law and the state law claim for damages based on the alleged negligent motorboat operation. (Tr. 235).

(6)

The Plaintiff bears the burden of proving her case by a preponderance of the evidence.

(7)

Wrongful death actions based on negligence may be maintained under maritime law. Thomas J. Schoenbaum, Admiralty and Mar. Law § 8-3 (4th ed. 2004).

(8)

Ordinary diligence is that degree of care which is exercised by the ordinarily prudent person under the same or similar

11

circumstances. The absence of such diligence is negligence. O.C.G.A. § 51-1-2.

(9)

Georgia law provides that the owner of a watercraft shall be liable for any tort caused by the operation of the watercraft, in the same manner and to the same degree as the owner of an automobile is liable for torts caused by operation of the automobile. O.C.G.A. § 51-1-21(b).

(10)

The owner of a vessel shall be liable for any injury or damage occasioned by the negligent operation of the vessel when the vessel is being operated with the consent of the owner. Gunn v. Booker, 381 S.E.2d 286, 288-89 (Ga. 1989) (citing O.C.G.A. § 51-1-22) (noting that owner-consent statutes go further than the family-purpose doctrine).

(11)

Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of age, inexperience, physical or mental condition or known habit of recklessness. Worthen v. Whitehead, 396 S.E.2d 595 (Ga. Ct. App. 1990) (citing Gunn, 381 S.E.2d at 290).

12

(12)

A first-party negligent entrustment case is one in which the plaintiff is the person who was negligently entrusted with the instrumentality in question. In such cases, liability is often cut off by the doctrine of comparative negligence. Zaldivar v. Prickett, No. S14G1778, --- S.E.2d ----, 2015 WL 4067788, at *10 (Ga. July 6, 2015).

(13)

In Georgia, the law provides that a "plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed." O.C.G.A. § 51-12-33(g).

## III. Mixed Findings of Fact and Conclusions of Law

(1)

The Court finds the testimony of Parker to be credible. Although he certainly has an interest in the outcome of the case, his demeanor on the stand, the nature of his recollections and the consistency of his testimony all lead the Court to conclude that he was not lying on the stand.

(2)

As a result, the Plaintiff is unable to meet her burden of proving that Parker was negligent.

(3)

13

Plaintiff did not prove that Parker was operating the boat at the time of the accident. Hodge could not determine who was driving. Parker has consistently and credibly maintained that Holmes was driving. True, Parker drove the boat more than Holmes did, and Parker drove the boat earlier in the morning, prior to the accident. However, multiple witnesses were aware that Holmes sometimes operated the boat.

(4)

Nor did Plaintiff prove that Parker was negligent in allowing Holmes to take the helm. He credibly testified that she had ample experience driving his boat, had ample familiarity with the area, and had prior experience operating the boat at night in the accident area.

(5)

Nor was it proven at trial that Holmes was impaired at the time of the accident. Her medical records did not indicate the presence of alcohol in her system. While Holmes' records were positive for cocaine and hydrocodone, there was no evidence at trial that Parker was aware of any drugs ingested by Holmes the night before or morning of the accident. Nor was there any evidence that Holmes was exhibiting signs of impairment prior to the accident.

14

(6)

Even accepting Hodge's conclusion that driver inattention, as opposed to a line fouling the propeller, caused the boat to hit the Jekyll jetty rocks, there is insufficient evidence that Parker was driving at the time of the accident, and there is insufficient evidence that Parker was negligent in allowing Holmes to drive.

(7)

To the extent Plaintiff alleges that Holmes' own negligent operation of the boat caused her injuries, and she is entitled to recover damages from Parker because he owned the boat and consented to her driving it, the doctrine of comparative negligence bars such recovery. Holmes' own negligence would overwhelm any other actor's alleged responsibility.

**CONCLUSION**

For the aforementioned reasons, the Court finds in favor of Defendant Parker and against the Plaintiff.

**SO ORDERED**, this 10TH day of July, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

15